# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| EAGLE AIR MED CORPORATION, a Utah corporation; and VALLEY MED FLIGHT INC., a North Dakota corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SENTINEL AIR MEDICAL ALLIANCE, LLC, a Wyoming limited liability company; JEFFREY FRAZIER, an individual; and DOES 1 through 10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' CONVERTED MOTION FOR PROTECTIVE ORDER (ECF NO. 127)**<br><br>Case No. 2:16-cv-00176-TC-EJF<br><br>Judge Tena Campbell<br><br>Magistrate Judge Evelyn J. Furse |

Defendants Sentinel Air Medical Alliance and Jeffrey Frazier (collectively, "Sentinel") filed a Motion to Quash Subpoenas to Sentinel Clients seeking to prevent Plaintiffs Eagle Air Med Corporation ("Eagle") and Valley Med Flight Inc. ("Valley") from serving subpoenas on ten Sentinel clients. (ECF No. 127). On September 19, 2017, the Court held a hearing on Sentinel's Motion. (ECF No. 133.) During the hearing, Sentinel converted its motion to quash into a motion for protective order. (ECF No. 140 at 14.) At the conclusion of the hearing, the Court asked the parties to submit additional briefing on three issues: (1) the Court's authority to modify or order withdrawal of the subpoenas issued in other jurisdictions; (2) how Eagle and Valley selected the Sentinel clients they subpoenaed; and (3) the relevance of the documents sought in the subpoenas concerning other air medical transport providers to Sentinel's good faith defense. (Id. at 41–43.) After a careful review of the parties' filings and papers, and

consideration of the parties' arguments during the hearing, the Court DENIES

Sentinel's Motion for the reasons addressed below.

## BACKGROUND

On April 7, 2017, the Court ordered Sentinel to provide Eagle and Valley with a list of Sentinel's clients since January 1, 2013. (ECF No. 34.) Sentinel provided the client list on June 23, 2017. (ECF No. 145 at 3.) In July 2017, Eagle and Valley's counsel noticed and served subpoenas on three entities—Builders Trust of New Mexico, New Mexico Casualty Company, and The Benefit Group—that Defendant Jeffrey Frazier identified as "top five" Sentinel clients. (Id. at 3, 6; ECF No. 145-3.) Sentinel did not object to the subpoenas until filing its motion to quash (now a converted motion for protective order) on September 11, 2017. (ECF No. 145 at 4.) The July subpoenas requested four types of documents: (1) communications with Sentinel referring to Eagle or Valley; (2) other communications with any person referring or relating to Eagle or Valley since January 1, 2013; (3) agreements with Sentinel regarding Sentinel's evaluations or recommendations concerning the medical necessity of, and reasonableness of charges and appropriate reimbursement for, any air medical transport; and (4) documents relating to services Sentinel rendered in connection with Eagle or Valley transports since January 1, 2013. (Id. at 3-4; ECF No. 127-3.)

In August 2017, Eagle and Valley served an additional seven subpoenas on Sentinel clients—Summit Management Services, Inc., Mutual Assurance Administrators, Inc., Meritain Health, Inc., UMR, Inc., CoreSource, Inc., Gilsbar,

LLC, and HealthSmart Benefit Solutions, Inc.—that they identified from the client list that Sentinel provided. (ECF No. 145 at 4-5; ECF No. 127-2.) The August subpoenas requested three specific types of documents: (1) documents regarding any review, evaluation, or recommendation that Sentinel provided from January 1, 2013 to December 31, 2015; (2) communications referring to Eagle or Valley from January 1, 2013 to December 31, 2015, including any with Sentinel; and (3) documents regarding Sentinel's expertise, skill, or qualifications. (Id.)

## LEGAL STANDARD

Parties may conduct discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A protective order may "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). The party seeking the protective order bears the burden of showing good cause. McBride v. Medicalodges, Inc., 250 F.R.D. 581, 583 (D. Kan. 2008). "Whether to enter a protective order lies within the court's discretion." Id.

**DISCUSSION**

As an initial matter, the Court has jurisdiction to decide Sentinel's motion, including as it relates to subpoenas issued to third parties in other jurisdictions, since Sentinel converted its motion to quash into a motion for protective order.[1] See, e.g., Straily v. UBS Fin. Servs., Inc., No. 07-CV-00884-REB-KMT, 2008 WL 5378148, at *2 (D. Colo. Dec. 23, 2008) (unpublished) (court has authority to enter a protective order relating to discovery sought in other jurisdictions because "the broad outlines of discovery in a civil case are controlled by the court where the case is filed"); Rajala v. McGuire Woods, LLP, No. 08-2638-CM-DJW, 2010 WL 4683979, at *7 (D. Kan. Nov. 12, 2010) (unpublished) (court has authority to entertain motion for protective order "where (1) the issues raised are central to the case and extend beyond the specifics of the particular subpoena, and (2) the requested ruling is necessary to insure that general discovery issues will receive uniform treatment, regardless of the district in which the discovery is pursued"). Eagle and Valley do not dispute that the Court has this authority. (ECF No. 145 at 2 n.1.)

With respect to the merits of its motion, Sentinel sets forth a number of arguments concerning the subpoenas, which it claims necessitate the issuance of a protective order. First, Sentinel argues that during the April 7, 2017 hearing the Court imposed limits on the scope of third party subpoenas sent to Sentinel clients. (ECF No. 127 at 2-3.) Specifically, Sentinel claims the Court limited the

---

[1] Eagle and Valley served Meritain Health, Inc., UMR, Inc., CoreSource, Inc., Gilsbar, LLC, and HealthSmart Benefit Solutions, Inc. in the District of Utah, so the Court would also have jurisdiction to quash those subpoenas. See Fed. R. Civ. P. 45(d)(3).

4

scope of subpoenas to documents between Sentinel and the subpoenaed party concerning Eagle and Valley. (Id.; ECF No. 136 at 2.) While the Court discussed anticipated discovery directed to Sentinel clients during the hearing, it did not impose a hard limitation on the scope of subpoenas. The hearing addressed Eagle and Valley's motion to compel production of Sentinel's client list. The Court did not have before it a motion concerning the scope of actual subpoenas directed at specific Sentinel clients, and the parties did not address the impact of the elements of the claims and affirmative defenses on the necessary scope of discovery directed to third parties. Therefore, the Court declines to use any of the statements made at the April 7 hearing to limit the scope of the subpoenas directed to Sentinel clients. Instead, the Court assesses the discovery sought through the subpoenas for relevance and proportionality.

Second, Sentinel argues that Eagle and Valley are attempting to harass Sentinel's clients through issuance of subpoenas. (ECF No. 127 at 2, 4; ECF No. 136 at 3, 5.) The Court does not find any evidence to support this assertion and is satisfied with Eagle and Valley's explanation concerning the method it used to select entities to subpoena from the client list Sentinel produced. As Eagle and Valley point out, during his deposition, Defendant Jeffrey Frazier identified three of the clients subpoenaed—Builders Trust of New Mexico, New Mexico Casualty Company, and The Benefit Group—as "top five" Sentinel clients. (ECF No. 145 at 3, 6; ECF No. 145-3.) Sentinel's counsel also identified New Mexico Casualty and The Benefit Group as entities for which Sentinel performed claims reviews relating to Eagle and Valley. (ECF Nos. 145 at 3 n.2 &

127-4.)  Therefore, the issuance of subpoenas to these entities is reasonable.

Of the seven other entities subpoenaed, Eagle and Valley's counsel compared the Sentinel client list[2] with a list containing Eagle and Valley payors during the relevant timeframe to identify entities that were both Sentinel clients and Eagle and Valley insurance payors.  (ECF No. 145 at 6-7.)  Six of the seven entities that Eagle and Valley's counsel identified as clients and payors in common, and issued subpoenas to, underpaid Eagle or Valley.  (Id.)  In all, Eagle and Valley subpoenaed 10 out of 188, or less than 5%, of the entities identified on the Sentinel client list.  (Id. at 7.)  Eagle and Valley also indicate their intention to subpoena nine additional Sentinel clients that substantially underpaid Eagle and Valley during the relevant time period.  (Id. at 7 n.5.)  If Eagle and Valley issue these subpoenas, they will have subpoenaed approximately 10% of the total number of Sentinel clients.

While the Court understands Sentinel's concerns regarding subpoenas to certain of its clients, the Court cannot conclude that Eagle and Valley have acted unreasonably in selecting the clients to subpoena or that they are engaging in a "fishing expedition."  Instead, the evidence indicates that Eagle and Valley's counsel have acted in good faith to limit the number of subpoenas issued to Sentinel clients and to issue subpoenas only to those clients who may have relevant information.[3]

---

[2] Sentinel designated the client list as Confidential-Attorney's Eyes Only.  (ECF No. 145 at 6-7.)  Therefore, Eagle and Valley's counsel could not enlist the help of its clients in selecting the entities to subpoena.  (Id.)

[3] Sentinel filed an addendum to its brief attaching an e-mail that it claims shows Eagle and Valley intend to issue a subpoena to every Sentinel client.  (ECF No. 142, Ex. 1.)

Importantly, as Eagle and Valley point out, Sentinel's document destruction policies have made third party discovery the only reasonable method for them to obtain many of the relevant documents in this case. (ECF No. 145 at 8, 10–12.) Had Sentinel employed different document retention policies, and had Eagle and Valley received the documents directly from Sentinel, then in all likelihood Eagle and Valley would not have needed to subpoena Sentinel clients. Thus, in considering the parties' relative access to relevant information, Eagle and Valley have no other alternative from which to obtain the relevant information.

Finally, Sentinel argues that the requests in the subpoenas are overbroad and seek irrelevant information. (ECF No. 127 at 3; ECF No. 136 at 6-9.) Sentinel's objections relate to the requests which seek (1) documents regarding any review, evaluation, or recommendation Sentinel provided from January 1, 2013 to December 31, 2015 (Request No. 1 in August subpoenas); (2) agreements with Sentinel regarding Sentinel's evaluations or recommendations concerning the medical necessity of, and reasonableness of charges and appropriate reimbursement for, any air medical transport (Request No. 3 in July subpoenas); (3) communications referring to Eagle or Valley from January 1, 2013 to December 31, 2015, including any with Sentinel (Request No. 1 in August subpoenas); and (4) communications with any person referring or relating to Eagle or Valley since January 1, 2013 (Request No. 2 in July subpoenas).

---

This information is irrelevant to the issue at hand. Eagle and Valley have not subpoenaed every Sentinel client; they have subpoenaed only a small subset of Sentinel clients. The Motion addresses the propriety of the subpoenas actually issued.

(See ECF No. 127 at 3; ECF No. 136 at 6-9; 9/19/17 Hr'g Tr. 17:24–19:11, ECF No. 145-1.)

Sentinel objects to the first two categories of documents because they do not relate specifically to Eagle and Valley or reviews that Sentinel performed relating to Eagle and Valley. (ECF No. 127 at 3; ECF No. 136 at 6-9.) Eagle and Valley argue that documents relating to reviews of non-Eagle/Valley transports relate to three of the elements necessary to establish their defamation claim. (ECF No. 145 at 8-12.) The Court agrees with Eagle and Valley.

To establish a claim for defamation, a plaintiff must demonstrate, among other things that "the statements were false," that "the statements were not subject to privilege," and that "the statements were published with the requisite degree of fault." Oman v. Davis Sch. Dist., 2008 UT 70, ¶ 68, 194 P.3d 956, 972. Eagle and Valley point to one of Sentinel's review letters as defamatory for stating that Eagle and Valley's "charges for this transport . . . in comparison to charges by other providers, [] are not reasonable. In fact, they are egregious." (ECF No. 145 at 8–9; ECF No. 149 at Ex. E.) To prove the falsity of this statement—one of the elements of a defamation claim—Eagle and Valley would need to present evidence concerning the rates other providers charged. If they can show that the other providers charged the same or similar rates, then they may be able to show the falsity of the statement that Eagle and Valley's rates were "egregious" in comparison.

In addition, evidence concerning Sentinel's state of mind—i.e., whether Sentinel knew about other providers' charges when it made the statements that

8

Eagle and Valley's charges were "egregious" in comparison to those of other providers—relates to the defamation elements requiring Eagle and Valley to show that the statements were not subject to a privilege and were published with the requisite degree of fault.

As Eagle and Valley point out, and Sentinel admits, Sentinel asserts privilege as a defense in this case. (ECF No. 136 at 6-7; ECF No. 145 at 9.) Courts "ha[ve] long been held that communications between persons who share a common business interest are qualifiedly privileged and not libelous in the absence of malice." Lind v. Lynch, 665 P.2d 1276, 1278 (Utah 1983). Sentinel has indicated that it intends to argue that it acted in good faith, which does not meet the malice standard. Eagle and Valley must present evidence to overcome the common interest privilege. See Russell v. Thomson Newspapers, Inc., 842 P.2d 896, 905 n.28 (Utah 1992) ("Plaintiff has the burden of presenting evidence to overcome the privilege."). To do so, Eagle and Valley must show that Sentinel acted with common law malice or actual malice in publishing the statements. See id. at 904–05 (describing how plaintiff can show common law malice with evidence that "the statements were made with ill will . . . or the defendant did not reasonably believe his or her statements were true"); Ferguson v. Williams & Hunt, Inc., 2009 UT 49, ¶ 28, 221 P.3d 205, 214–15 (stating test for showing actual malice with evidence that the defendant "made a defamatory statement knowing it to be false or . . . acted in reckless disregard as to its falsity").

Because Eagle and Valley have to show malice, documents bearing on Sentinel's state of mind in making the statement that Eagle and Valley's charges

9

were "egregious" compared to other providers' charges are relevant. If documents relating to other providers show that they charged the same or similar rates as Eagle and Valley, these documents may support a finding of malice, i.e., that Sentinel did not reasonably believe the statements regarding Eagle and Valley's charges, or that it knew the statements to be false or acted in disregard as to their falsity. Therefore, the Court finds that the requests for documents and agreements relating to Sentinel's reviews, evaluations, and recommendations for other providers are relevant and important to the resolution of the issues in this case. However, the Court limits the requests to the relevant period of January 1, 2013 to December 31, 2015.[4] This date restriction helps to limit the burden and expense of the discovery to the period most likely to bear on the case.

Sentinel also objects to the requests seeking communications concerning Eagle and Valley because the requests are not limited to communications between Sentinel and the subpoenaed party regarding Eagle and Valley. The Court does not find the requests for other communications referencing Eagle and Valley objectionable. Communications with persons other than Sentinel concerning Eagle and Valley could contain relevant information. For example, internal communications of the subpoenaed parties may refer to and discuss Eagle and Valley's charges and the basis for not paying the claims in full, which could include references to allegedly defamatory statements in Sentinel's review letters. Any such documents would have significance to the causation element. Therefore, the Court finds the requests for communications referring to Eagle

---

[4] The August subpoenas are limited to this period, but the July subpoenas are not.

and Valley relevant and proportional to the needs of the case. However, the Court limits the requests to the relevant period of January 1, 2013 to December 31, 2015.[5]

## **CONCLUSION**

For the foregoing reasons, the Court DENIES Sentinel's Motion. However, the Court cautions Eagle and Valley that they should issue additional subpoenas to Sentinel clients sparingly and only to those clients for which Eagle and Valley's counsel has a good faith belief that those clients have relevant documents. Further, the subpoenas should be narrowly tailored to seek only relevant documents relating to the relevant time period in this case.

DATED this 1st day of February, 2018.

*Evelyn J. Furse*
Evelyn J. Furse
United States Magistrate Judge

---

[5] The August subpoenas are limited to this period, but the July subpoenas are not.