IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| EAGLE AIR MED CORPORATION, a Utah corporation; and VALLEY MED FLIGHT INC., a North Dakota corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> SENTINEL AIR MEDICAL ALLIANCE, LLC, a Wyoming limited liability company; JEFFREY FRAZIER, an individual; and DOES 1 through 10, <br><br> Defendants. | ORDER AND <br> MEMORANDUM DECISION <br><br><br> Case No. 2:16-cv-00176-TC-EJF |

On August 30, 2019, the court granted in part and denied in part the motion for summary judgment brought by Defendants Sentinel Air Medical Alliance, LLC, and Jeffrey Frazier ("Sentinel"). Sentinel now asks the court to reconsider part of that order. (ECF No. 441.) Additionally, Plaintiffs Eagle Air Med Corporation and Valley Med Flight, Inc. ("Eagle") have asked the court to clarify a portion of its summary judgment order. (ECF No. 438.) For the reasons stated below, Sentinel's motion for reconsideration is granted, and Eagle's motion for clarification is denied.

# ANALYSIS

## I.     Background

As discussed in more detail in the summary judgment order, Eagle provides emergency air ambulance services, and Sentinel is a consultant that provides recommendations to insurance companies regarding how much they should pay Eagle for its flights. <u>Eagle Air Med Corp. v. Sentinel Air Med. All., LLC</u> ("<u>Eagle Air</u>"), Case No. 16-cv-00176, 2019 WL 4140918 at *1 (D. Utah Aug. 30, 2019).  Eagle's defamation cause of action primarily challenged statements Sentinel made in the letters it sent to the insurance providers.  In a typical letter, Sentinel identified the amount Eagle billed, calculated an estimate of Eagle's costs for that flight, and then compared those costs to the amount Medicare would have paid for the flight, the amount a competing provider would have charged for the flight, and the amount Sentinel believed the insurer should pay for the flight.  So, for example, in one letter, Sentinel made the following statements:

> Billed charges for this transport amount to $29,659. . . .
>
> In this case, an accurate estimate of [Eagle's] costs [is] $6,400. . . .
>
> Reimbursement provided under Medicare for this transport would be $5,368. . . .
>
> Sentinel has a contracted provider that would have performed this transport for $8,700. . . .
>
> [Eagle's billed] charges represent 552 percent of the Medicare reimbursement rate, 340 percent of charges from a competing provider, and 463 percent of the cost of providing the service. . . .
>
> A reasonable reimbursement for this transport would be $11,900.  This represents 221 percent of the Medicare reimbursement rate and provides [Eagle] with an 86 percent margin.

Id. at *1-2.  Sentinel's letters also noted that the transportations provided by Eagle were not medically necessary, that Eagle's charges were "egregious" or "among the most egregious in the industry," and, in one instance, that Eagle was possibly engaged in self-referrals.  Id.

The court held that Sentinel's calculation of Eagle's estimated costs was not defamatory because it was "materially accurate."  Id. at *7.  It also concluded that the medical necessity statements carried no defamatory meaning and that identifying Eagle's charges as "egregious" was non-actionable opinion.  Id. at *6, 9.  Neither party challenges any of these conclusions.

But the court also ruled that there were triable issues of fact regarding whether Sentinel's self-referral statement and profit margin calculations were defamatory.  Id. at *8-9.  Sentinel now asks the court to reconsider that part of its decision.

Additionally, in a footnote, the court indicated that its order had addressed every defamatory statement at issue in the action, and accordingly, that the profit margin and self-referral statements were the only claims remaining for trial.  Id. at *4 n.1.  Eagle maintains that two other issues—whether Sentinel's cost calculations are implicitly defamatory and whether Sentinel made false comparisons to competing providers—should also be addressed at trial. Eagle asserts that Sentinel was aware of these statements but chose not to challenge them in its summary judgment motion.  Eagle asks the court to clarify that these statements remain viable, notwithstanding the footnote in the order.

## II.    Appropriate Pleading Standard

Both the motion for reconsideration and the motion for clarification turn, in part, on the sufficiency of Eagle's pleadings.  In its motion for reconsideration, Sentinel contends that neither the profit margin calculations nor the self-referral statement were included in the operative First

Amended Complaint ("FAC"). (ECF No. 6.) Similarly, in its opposition to Eagle's motion for clarification, Sentinel argues that Eagle never alleged a defamation claim based on either the implications of Sentinel's cost calculations or the contract provider comparisons. Accordingly, Sentinel requests that Eagle be barred from proceeding to trial on any of these issues.

The parties agree that, under Utah law, defamation must be pled specifically. Dennett v. Smith, 445 P.2d 983, 984 (Utah 1968) ("[T]he language complained of must be set forth in words or words to that effect . . . . [T]he defendant should not be required to resort to the ofttimes expensive discovery process to drag from a litigant what he really intends to do to his adversary."). But they dispute whether a complaint in federal court is required to satisfy this same standard. Upon reviewing the cases submitted by the parties, the court concludes that generally—and certainly in this district—a heightened pleading standard applies.

As one recent District of Utah case stated, "[t]his specificity requirement is not only a Utah construct: federal courts have consistently interpreted Fed. R. Civ. P. 8(a) as requiring that defamation claims be pleaded with particularity to provide a defendant with fair notice." Rowe v. DPI Specialty Foods, Inc., Case No. 2:13-cv-00708-DN-DJF, 2015 WL 13047675 at *4 (D. Utah Aug. 20, 2015) (citing Bushnell Corp. v. ITT Corp., 973 F. Supp. 1276, 1287 (D. Kan. 1997); McGeorge v. Cont'l Airlines, Inc., 871 F.2d 952, 955 (10th Cir. 1989); Nogle v. Sand Canyon Corp., Case No. 12-CV-23-S, 2012 WL 4857772 at *6 (D. Wy. Oct. 11, 2012); 5 Charles Wright & Arthur Miller et al., Federal Practice and Procedure §§ 1245, 1357 (3d ed.)).

Other cases from the District of Utah agree. For example, in Boisjoly v. Morton Thiokol, Inc., 706 F. Supp. 795 (D. Utah 1988), the court explicitly applied Utah's pleading standard to a complaint in federal court:

> The Court holds that the conclusory allegations in paragraph seventy-one do not meet the particularity requirements with which a defamation claim must be alleged. Utah law requires that a claim must identify the defamatory statement either by its "words or words to that effect;" general conclusory statements are inadequate. . . . Paragraph seventy-one clearly fails to allege, in "words or words to that effect," a single specific defamatory statement by defendant MTI.

Id. at 799-800.

Another case, Celli v. Shoell, 995 F. Supp. 1337 (D. Utah 1998), did not go quite as far. It noted that "the court applies federal pleading standards rather than looking to . . . Utah law." Id. at 1346. But it nevertheless still agreed that some level of heightened pleading was required even under the federal standards: "In the case of a defamation claim, the allegations in the complaint must afford the defendant sufficient notice of the allegedly defamatory communications to allow him to defend himself. . . . [F]ederal pleading standards generally require the complaint to state the specific words of the allegedly defamatory statement in order to allow the defendant to frame a responsive pleading." Id. (citing Goldstein v. Kinney Shoe Corp., 931 F. Supp. 595, 597 (N.D. Ill. 1996)).

Other cases submitted by Sentinel reinforce this conclusion. See, e.g., Pike v. City of Mission, Kan., 731 F2d 655, 661 (10th Cir. 1984) (a "broad conclusory allegation" is insufficient to plead defamation if it includes "insufficient facts concerning time, place, actors, or conduct to enable defendants to respond") (rev'd on other grounds, Canfield v. Douglas County, 619 F. App'x 774 (10th Cir. 2015)); Phantom Touring, Inc. v. Affiliated Publ'ns, 953 F.2d 724, 728 n.6 (1st Cir. 1992) ("In our view, a defendant is entitled to knowledge of the precise language challenged as defamatory, and the plaintiff therefore is limited to its complaint in defining the scope of the alleged defamation. If plaintiff wished to enlarge its case beyond the six articles originally challenged, it should have sought to amend the complaint."); Royal Pac. Ltd. v. Faith

Elec. Mfr. Co., Ltd., 322 F. Supp. 3d 1178, 1185 (D.N.M. 2018) ("Federal courts relying on a Rule 8 standard have held that some specificity about the allegedly defamatory communication is required in order to give the defendant adequate notice.").

Eagle has identified no District of Utah or Tenth Circuit cases that support a less stringent pleading standard. But during oral argument, it did cite two federal cases from New York for the proposition that such specific pleading is not necessary. In one, the Second Circuit held that under the federal pleading rules, "[t]he central concern is that the complaint 'afford defendant sufficient notice of the communications complained of to enable him to defend himself.'" Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) (quoting Liguori v. Alexander, 495 F. Supp. 641, 647 (S.D.N.Y. 1980)). Similarly, in Griffin-Nolan v. Providence Washington Insurance Co., No. 504CV1453FJSGJD, 2005 WL 1460424 (N.D.N.Y. June 20, 2005), the court ruled that "[s]ince federal law governs the procedural issues in this case, . . . the heightened pleading requirement of New York Civil Practice Law and Rules § 3016(a) does not apply to this action." Id. at *12.

These cases do not support departing from the standard articulated in the District of Utah cases. After all, "sufficient notice of the communications complained of to enable [a defendant] to defend himself" implies a fair amount of specificity. Kelly, 806 F.2d at 46. Moreover, the complaint in the Griffin-Nolan action was actually quite specific in identifying the alleged defamation. See Complaint at ¶ 48, Griffin-Nolan v. City of Syracuse, No. 04cv01453, 2004 WL 3513361 (Dec. 15, 2004). In holding that New York's state rules did not apply, the Griffin-Nolan court was only responding to the plaintiff's contention that defamation had to be pled

verbatim.[1]  It is unclear how vague a pleading could be before the <u>Griffin-Nolan</u> court would require more, as that issue was not before the court.

After the hearing, Eagle submitted a notice of supplemental authority listing three other federal cases that discuss the application of federal pleading standards to defamation cases.[2] (ECF No. 468.)  While these cases, in varying degrees, reject strict state pleading requirements in favor of more liberal federal pleading standards, none of them endorse standards that are as broad as Eagle desires.  <u>See, e.g.</u>, <u>Rivera v. Allstate Ins. Co.</u>, 140 F. Supp. 3d 722, 728 (N.D. Ill. 2015) (holding that although the amended complaint "[did] not specifically mention" certain documents, the defendant "cannot plausibly contend that the amended complaint left [the defendant] unaware of the basis for Plaintiffs' defamation claim"); <u>C&M Prop. Mgmt. v. Moark, LLC</u>, No. 2:15-cv-336-GZS, 2016 WL 1298098 at *3 (D. Me. Mar. 31, 2016) (agreeing that discovery could be used to "clarif[y] the factual allegations" of the complaint, but only after noting that the complaint included "specific allegations as to each element of the defamation cause of action"); <u>Muzikowski v. Paramount Pictures Corp.</u>, 322 F.3d 918, 926 (7th Cir. 2003) (noting that a complaint was sufficient because it "list[ed] in great detail" the alleged defamation).

---

[1] The New York Civil Practice Law and Rules § 3016(a) states, "In an action for libel or slander, the particular words complained of shall be set forth in the complaint."  New York courts have held that this means defamation must be pled verbatim.  <u>See</u> <u>Smalley v. Dreyfus Corp.</u>, 832 N.Y.S.2d 157, 163 (N.Y. App. Div. 2007) ("[T]he two verbal statements on which the plaintiffs base their claim are paraphrased and therefore do not meet the minimum requirements of CPLR 3013 and 3016(a).") (rev'd on other grounds, <u>Smalley v. Dreyfus Corp.</u>, 882 N.E.2d 882 (N.Y. 2008)).

[2] A fourth case, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002), does not address defamation.  It simply discusses what is generally required under Rule 8 for a complaint to be sufficient, in contrast with the stricter pleading requirements for fraud under Rule 9.  <u>Id.</u> at 513.

Upon reviewing these cases, the court is inclined to follow the standards adopted by other District of Utah judges. The court is persuaded that in the defamation context, the pleadings should "identify the defamatory statement either by its 'words or words to that effect.'" Boisjoly, 706 F. Supp. at 800; see also Rowe, 2015 WL 13047675 at *6 ("[E]vidence which materially varies from the 'words or words to that effect' alleged in the Complaint will be excluded.").)

Nevertheless, the court notes that its conclusions below regarding the sufficiency of Eagle's pleadings would not change even if it applied the more liberal standard implied by some of the cases Eagle cites. In the court's view, two of the statements challenged by Sentinel were sufficiently pled and two were not properly pled, and this is true whether the pleading standard is construed liberally or more narrowly.

A.      Profit Margin Calculations

Sentinel's letters included calculations regarding the size of Eagle's profit margins. For example, in the letter excerpted above, Sentinel warned that "[Eagle's billed] charges represent . . . 463 percent of the cost of providing the service" and recommended that "[a] reasonable reimbursement for this transport would be $11,900. This . . . provides [Eagle] with an 86 percent margin." Eagle Air, 2019 WL 4140918 at *2.

Although the FAC never explicitly referred to "profit margins," the court concludes the allegations sufficiently put these statements at issue. Eagle alleged, for example, that Sentinel's "statements and recommendations regarding [Eagle's] charges based on [Sentinel's] operational costs analysis [were] false and misleading." (FAC ¶ 45 (emphasis added).) Eagle also alleged that Sentinel's "statements and recommendations[] are part of a scheme to force air medical

transport companies like Eagle . . . to accept less than the usual and reasonable amount for their services." (Id. at ¶ 50 (emphasis added).) These allegations are enough to place Sentinel on notice that its profit margin calculations, which were an essential part of its recommendations to the insurers, were part of Eagle's suit.

### B.     Cost-Per-Flight Calculations

Sentinel's letters also include an estimate of how much each flight cost. The court concluded these estimates were "materially accurate," and so could not support a defamation claim. Eagle Air, 2019 WL 4140918 at *7. Eagle argues the court's conclusion addressed only whether the calculations were directly defamatory, not whether the calculations were implicitly defamatory.

The accuracy of Sentinel's cost calculations was the central allegation of the complaint. (FAC ¶¶ 40-45.) Eagle also made clear that it was accusing Sentinel of both direct and implied defamation. (Id. at ¶¶ 49, 77-78.) Accordingly, this issue was sufficiently pled.

### C.     Self-Referral Statement

In one of its letters, Sentinel included the following passage:

> The sending facility is located in Blanding, Utah. Blanding is also the location of the home office of Eagle Air Med. The relationship between the facility and the provider is unknown, but payors must be aware of the issue of self-referral sometimes present in the air ambulance industry.

(Ex. B-1-1 to Defs.' Mot. Summ. J. (ECF No. 206-4).)

Regarding this statement, the court held:

> The statement does not directly accuse Eagle of engaging in self-referral, and each part of the statement, read in isolation, may be true. But "it is the implication arising from the statement and the context in which it was made, not the statement itself, which forms the basis of [the] claim." West, 872 P.2d at 1011. Though Sentinel disavowed any knowledge of self-referral, its statement

can be read to imply that Eagle was engaging in the practice, and thus acting
dishonestly and unethically.

Eagle Air, 2019 WL 4140918 at *9.

Having reviewed the pleadings, the court now concludes this statement was never
properly pled. The court cannot find any allegation in the amended complaint that Sentinel
defamed Eagle by accusing it of engaging in self-referrals.

The amended complaint is primarily focused on only two categories of statements. Eagle
alleges that Sentinel made "multiple material misrepresentations of [Eagle's] operational costs
and the medical necessity of [Eagle's] services." (FAC ¶ 36.) Although Eagle goes on to
provide additional details about the medical necessity determinations (id. at ¶¶ 37-39) and the
operational costs calculations (id. at ¶¶ 40-47, 57-75), none of these allegations support a
defamation claim for self-referral.

Eagle also identifies several direct quotes from Sentinel that it believed were defamatory,
all of which arise from the same two primary allegations identified above. For example, Eagle
accuses Sentinel of stating that Eagle's charges were "egregious" or "among the most egregious
in the industry," that air ambulances make "threats" and "demands" to get paid, that their billing
rates were "a bunch of smoke" or "bluster," and that air ambulances try to "scar[e]" or "coerc[e]"
patients into demanding their insurer pay the full amount. (Id. at ¶ 48.)

The amended complaint includes no other substantive allegations. The self-referral
statement was never mentioned. This is particularly problematic because the alleged defamation
arose from twenty-one different letters to insurance providers, each of which included statements
about medical necessity and operational costs, but only one of which included a comment about
self-referrals. A reasonable defendant, placed in this situation, would have no reason to suspect

the self-referral statement—never mentioned in the complaint and only included in a single letter—was one of the statements Eagle was challenging.

Eagle maintains that it is enough that Sentinel subsequently learned through discovery and briefing that Eagle viewed this statement as defamatory. Eagle submits evidence that it asked Mr. Frazier about the self-referral statement during his deposition and that Sentinel, in turn, later asked Eagle's expert about self-referrals in the air ambulance industry during his deposition. (See Frazier Dep. at 283:23-287:6, Ex. 24 to Pls.' Opp'n to Mot. Summ. J. (ECF No. 227-27); Schneider Dep. at 76-80, Ex. C to Defs.' Mot. Recons. (ECF No. 441-4).) Additionally, Eagle identified the self-referral statement as defamatory in its opposition to Sentinel's motion for summary judgment. (Pls.' Opp'n to Mot. Summ. J. at 49-50 (ECF No. 229).)

Nevertheless, at least in the circumstances present here, the court concludes this was not enough. As noted in Rowe v. DPI Specialty Foods, Inc., Case No. 2:13-cv-00708-DN-EJF, 2015 WL 12778767 (D. Utah Aug. 20, 2015), "[T]he complaint 'circumscribes the relief the court can award.' . . . The more specific statements [the plaintiff] produced in an interrogatory response and an opposition brief are available for impeachment purposes, but because they are not contained in the Complaint, they are not the boundaries of [the plaintiff's] claim." Id. at *3.

Eagle's own authority supports the same conclusion. In Rivera, for example, the Northern District of Illinois held that an unpled allegation could go forward because the defendant "ha[d] known from the outset" that the statement was at issue and could not "plausibly contend that the amended complaint left [the defendant] unaware of the basis for Plaintiffs' defamation claim." Rivera, 140 F. Supp. 3d at 728. While Sentinel may have discovered Eagle's concerns about the self-referral statement at some point before the summary judgment

stage, the record is at best hazy on this issue,[3] and Eagle certainly has no evidence that Sentinel was aware of the issue from the outset of the case.  And in <u>C&M Property Management, LLC</u>, while the District of Maine held that "pretrial discovery procedures" could be used to "clarif[y] the factual allegations underlying each of the defamation elements," this holding was made in response to a complaint that contained "specific allegations as to each element of the defamation cause of action."  <u>C&M Property Mgmt., LLC</u>, 2016 WL 1298098 at *3.  Nothing in that court's opinion suggests discovery could be used to pursue entirely new, never-pleaded defamatory statements, absent amending the complaint.

Accordingly, having reviewed the allegations, the court now reconsiders its summary judgment order and concludes that the self-referral statement was never sufficiently put at issue in the pleadings and should not be permitted at trial.[4]

---

[3] For example, although the issue was raised in some of the depositions, it appears Eagle did not actually identify it as a defamatory statement until its last supplemental response to Sentinel's interrogatories, which were served on the last day of discovery, impeding Sentinel's ability to further investigate the issue.  (<u>See</u> Dfs.' Reply to Mot. Recons. at 3 (ECF No. 462).)

[4] Even if properly pled, the court notes that it would be inclined to reconsider this issue on the merits as well. Sentinel has submitted evidence that Eagle was not actually damaged by the self-referral statement because it was paid "about what [it would] expect" by the entity that received the letter containing that statement.  (<u>See</u> Dorman Dep. at 53:15-25, 55:9-18, Ex. C to Defs.' Mot. Summ. J. (ECF No. 206-10).)  Absent damages, Eagle's claim would need to be defamatory per se to survive.  But as Sentinel points out, "libel is classified per se if it contains defamatory words specifically directed at the person claiming injury, which words must, on their face, and without the aid of intrinsic proof, be unmistakably recognized as injurious."  <u>Jacob v. Bezzant</u>, 212 P.3d 535, 545 (Utah 2009) (quoting <u>Seegmiller</u>, 626 P.2d at 977 n.7).  Here, Sentinel's statement was ambiguous because it says it is "unknown" whether Eagle engaged in self-referrals, and because it suggests only that self-referrals are a problem in the air ambulance industry as a whole.  While a reasonable juror might be able to find that the statement defamed Eagle, doing so would require that the juror make certain inferences about the statement's meaning and target. Accordingly, the statement is not "specifically directed at the person claiming injury," nor is it defamatory "on [its] face . . . without the aid of intrinsic proof."  <u>Id.</u>  Because the statement is not defamatory per se, and because Eagle was not otherwise damaged by the statement, this claim would fail even if it had been properly pled.

### D. Competing Provider Statements

Finally, one of the statements Sentinel frequently included in its letters was a comparison to other providers. For example, in the sample letter above, Sentinel stated that it "ha[d] a contracted provider that would have performed this transport for $8,700" and warned that Eagle's billed charges "represent[ed] . . . 340 percent of charges from a competing provider." Eagle Air, 2019 WL 4140918 at *2. Eagle suggests that this comparison was defamatory because Sentinel is referring to providers that only engage in non-emergency, preplanned contract flights. Eagle argues that it is misleading to compare the kind of emergency services it provides to these contract services.

The court again concludes this claim was not included in the amended complaint. In fact, Eagle effectively admits in reply that this issue was never alleged. Eagle acknowledges that "[a]t the time of filing the complaint, Plaintiffs had not yet learned that Sentinel's statements about its 'contract' or 'competing' providers were false." (Pls.' Reply to Mot. Clarify at 4 (ECF No. 457).) Sentinel could not have inferred from the complaint that a particular statement was defamatory when Eagle itself did not believe it was defamatory at the time it wrote the complaint. And Eagle never explains why, after determining these statements were false, it did not move to file another amended complaint.

Similar to the self-referral issue, Eagle emphasizes that even if these statements were not included in the pleadings, Sentinel was on notice of the claim because the issue had been discussed during discovery and identified in Eagle's summary judgment briefing. But notably, even in its opposition to the motion for summary judgment, Eagle never asserted that the comparison to contract providers was itself defamatory. Part I of the opposition is labelled,

"Defamatory Statements at Issue" and includes a list of seven defamatory statements. (Pls.'
Opp'n to Mot. Summ. J. at 40-42 (ECF No. 229).) The contract provider statements were not
included on that list. Part II of the opposition is labelled "There are Genuine Issues of Material
Fact Concerning the Falsity of Defendants' Statements." Once again, the contract provider
statements are never mentioned here. (Id. at 43-51.) It is not until Part III, when Eagle begins
addressing the issue of privilege, that Eagle remarks that "Defendants' comparisons of the costs
and charges associated with medical charter flights to Plaintiffs' emergent and medically-
necessary transports were inappropriate and highly misleading." (Id. at 55.)

It appears from the opposition that Eagle viewed the competing provider statements as
evidence of malice. The purpose of highlighting those statements was to show that other
defamatory statements had been made maliciously, as demonstrated by Sentinel's willingness to
support its recommendations with a misleading apple-to-oranges comparison of flight costs. But
Eagle never suggested in the opposition that it believed the comparisons themselves were
defamatory.

In sum, Eagle admits that it did not view these statements as defamatory at the time it
filed the operative complaint. Eagle did not identify these statements as defamatory at the time
of its opposition to Sentinel's motion for summary judgment. If Eagle itself did not identify
those statements as defamatory, then it is unclear how Sentinel could have known it had to
address that issue in its motion. It would be substantively unfair to allow Eagle to now raise this

claim at this late date.  Accordingly, the court will not permit Eagle to proceed to trial on the competing provider statements.[5]

## III.    Merits

The court now turns to the merits of the two issues that were properly pled.

### A.    Summary Judgment Standard

Sentinel contends, as an overarching matter, that the court applied the wrong standard in its summary judgment order.  According to Sentinel, the court incorrectly "view[ed] the facts and dr[e]w all reasonable inferences in favor of the non-moving party."  Eagle Air, 2019 WL 4140918 at *5 (2019).  While this is the typical standard for a motion for summary judgment, Sentinel maintains that in the defamation context, such favorable inferences are inappropriate.

Sentinel overstates the difference between motions for summary judgment in defamation cases and motions for summary judgment in other cases.  For most aspects of the inquiry, the same standard applies to both.  The only exception is that "a district court . . . does not construe all factual inferences in favor of the nonmoving party, as it would in other cases," when evaluating whether a statement is "susceptib[le] to a defamatory interpretation."  Nunes v. Rushton, 299 F. Supp. 3d 1216, 1233 (D. Utah 2018) (quotations omitted).  Instead, for this one part of the claim, the court "conduct[s] a context-driven assessment" to "reach an independent conclusion" about defamatory meaning.  Id. (quotations omitted).

_____

[5] The court again briefly notes that, as with the self-referral statement, it appears likely this claim would also be denied on the merits.  At the hearing on this motion, Eagle's counsel stated, "With respect to defamatory meaning, [the competing provider statements are] defamatory for the same reasons that the court found that the profit statements were defamatory. That a reasonable reader, looking at that, could conclude that we are trying to charge exorbitant prices for our services and trying to extract that from the payors."  But after reconsidering the matter, the court concludes below that the profit margin statements are not defamatory.  So the same analysis would apparently mean these competing provider statements are not defamatory as well.

Having reviewed its order, the court concludes that none of its findings regarding a defamatory interpretation were based on improper inferences in favor of Eagle.

**B.      Profit Margin Calculations**

In its summary judgment order, the court held:

> By asserting the profit margin that Eagle and Valley would make on each flight (as opposed to simply the operational cost of each flight), the statements can be read to imply that Eagle and Valley arbitrarily overbilled for transports to collect exorbitant profit margins, which would impeach the companies' honesty and integrity. The statements are thus capable of carrying a defamatory meaning.

> Moreover, Eagle and Valley have presented evidence from which a jury could find that the profit margin calculations were materially inaccurate. They point to the "payor mix"—the overall stream of revenue that includes Medicare and Medicaid reimbursements, individual customers who self-pay (and often do not pay) for flights, and reimbursements from commercial insurance providers such as those here.

> . . .

> This evidence suggests legitimate reasons for the billed charges—that they were driven by the economic realities of the air ambulance industry, not by unscrupulous efforts to obtain high profits. Because Sentinel's profit margin calculations can be read to imply that Eagle and Valley were arbitrarily overbilling patients, and because Eagle and Valley have submitted evidence that the implication is false, the statements can support a claim of defamation.

Eagle Air, 2019 WL 4140918 at *8.

Sentinel asks the court to reconsider this conclusion. Sentinel argues that its statements regarding Eagle's margins cannot be defamatory because they are either factually true or are non-actionable opinion.

First, Sentinel notes that its statements cannot be defamatory because they consist of nothing more than truthful and correct mathematical equations. According to Sentinel, the court already concluded that Sentinel's cost estimates were materially accurate, and mathematically, it

16

follows that $29,659 is 463 percent above $6,400, 552 percent above $5,368, 340 percent above $8,700, and 86 percent above $11,900.

The court agrees the calculations themselves are materially accurate and are not, without more, defamatory. The question is whether the calculations create any defamatory implications.

Eagle attempts to identify a defamatory implication in its opposition but its efforts ultimately just confirm that any such implication would be protected opinion. Eagle states, for example, that Sentinel "directly and by implication accuses [Eagle] of overbilling for transports to reap exorbitant profits"; that "Sentinel's statements imply that Plaintiffs' billing was arbitrary"; that Sentinel implies that Eagle "charged rates far beyond what any legitimate air ambulance operator would charge"; and that Sentinel implies that Eagle is "seeking to reap excessive profits." (Pls.' Opp'n to Mot. Recons. at 9-11 (ECF No. 451).) These implications are all non-actionable opinion. There is no factual or articulable standard by which a jury could determine whether Eagle's bills were "arbitrary," "exorbitant," "excessive," "[il]legitimate," or "overbilling." Instead, as Sentinel persuasively argues:

> [W]hether a company's "profit margins" are low, high, or "exorbitant" is necessarily a matter of opinion that could vary based on a limitless range of factors, including one's personal values, political beliefs, and opinions on capitalism. . . . [I]f this alleged implied opinion proceeds to trial, the parties would join issue over what a <u>reasonable</u> charge would be and what a <u>reasonable</u> profit margin would be, with the jury ultimately deciding a benchmark of reasonableness based upon competing expert <u>opinions</u>. But the concepts of whether prices are "arbitrarily" set or amount to "overbilling" (terms never used by Sentinel) are opinions and thus not actionable.

(Defs.' Mot. Recons. at 12-13 (ECF No. 441) (emphasis in original).)[6]

---

[6] The court briefly notes that Sentinel also contends that its letters only ever use the words "percent margin" or "gross margin," which is distinct from the concept of "profit margin." This argument is not particularly compelling. A reasonable juror could conclude that "percent margin" meant "profit margin." Accordingly, for purposes of this order, the court accepts that the "margin" referred to implies a profit margin.

To rebut this conclusion, Eagle cites a single state court case from 1948 that held that it might be defamatory for the defendant to accuse the plaintiff of dramatically inflating the price of stamps, "forcing American collectors to pay exorbitant prices."  Lo Bianco v. Scott Publ'ns, Inc., 82 N.Y.S.2d 248 (N.Y. Sup. Ct. 1948).  But that decision—which is, in its entirety, three paragraphs long, and has been cited only once in the last seventy years for a general proposition of law (see Andrews v. Steinberg, 471 N.Y.S.2d 764, 768 (N.Y. Sup. Ct. 1983))—contains no discussion of why "exorbitant prices" is not a statement of non-actionable opinion.

Sentinel, by contrast, has identified more recent and more thorough cases that classify similar statements as protected opinion.  For example, one court held that it is non-actionable opinion to accuse a person of engaging in a "trick" to "add to an already handsome profit." Andrews v. Stallings, 892 P.2d 611, 622 (N.M. Ct. App. 1995).  Another held that referring to a person's conduct as "a money-making scheme designed by Plaintiff to line his pockets with profit" was non-defamatory.  O'Boyle v. Sweetapple, Case No. 9:14-cv-81250-KAM, 2015 WL 13574304 at *4 (S.D. Fla. June 4, 2015).  And in Chapin v. Knight-Ridder, Inc., 993 F.2d 1087 (4th Cir. 1993), a case Sentinel particularly emphasizes, the court held that it was non-actionable opinion for a newspaper to accuse a charity of engaging in "hefty mark-ups," in part because "the article, in some detail, recounts [the defendants'] efforts to estimate the wholesale cost of the items in the [charity].  Because the bases for the 'hefty mark-up' conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related."  Id. at 1093.

In sum, Eagle has tried to tease out some defamatory meaning from Sentinel's calculations, but those efforts consistently lead only to the conclusion that the implications, if any, were protected matters of opinion.

Eagle attempts to distinguish the above cases by noting that Sentinel used specific quantities—e.g., 463 percent or 86 percent—in criticizing Eagle's margins, rather than more general comments about "handsome profits" or "hefty mark-ups." But this makes no difference. To the extent Eagle reads these letters as implying a specific profit margin for each individual flight, the statement is materially true: Sentinel accurately estimated Eagle's per-flight costs, compared that number to the amount Eagle billed, and reported that difference in the form of a percentage. If this is how the implication is framed, then Eagle's objection is not to Sentinel's profit margin calculation—which, again, is just the result of an equation—but to the court's conclusion that Sentinel's calculations of Eagle's per-flight costs were materially accurate. Neither party asks the court to revisit that issue, so this argument necessarily fails.

Perhaps in recognition of this, Eagle also suggests that the defamatory implication is not the specific profit margin for each flight but Eagle's overall profitability. According to Eagle:

> [T]he actionable implication from Sentinel's statements regarding Plaintiffs' margins is that Plaintiffs are seeking to reap profit margins that are far greater than their actual average profit margins. (To take the example of the letter referred to in the Court's order, based on Sentinel's statement that a $11,900 reimbursement would "provide Valley with a 68% profit margin," then Valley's billed charges of $29,659 would represent an attempt to collect a 363% profit margin, implying that Valley's average profit margin is near 363%.)[7]

(Pls.' Opp'n to Mot. Recons. at 11-12 (emphasis added).)

_____

[7] The sample numbers used by Eagle appear to be typographical mistakes. Sentinel's letter referred to 86 percent and 463 percent, not 68 percent or 363 percent.

The court concludes that no reasonable reader would conclude from Sentinel's letters that the profit margin identified for any single flight was somehow a proxy for Eagle's overall profit margin. Each letter itself acknowledges that Medicare would pay significantly less for these claims. Each letter also recommends that the insurer pay significantly less than the amount billed. For a reader to conclude that Eagle had an average profit margin of 463 percent (using the number from the sample letter), the reader would have to assume that Eagle never accepted Medicare payments and that no other insurers ever followed Sentinel's advice and encouragement to pay significantly less than the amount Eagle billed. This is an irrational conclusion. A reasonable person, after reading Sentinel's letter, would believe that Eagle's average profit margin was lower than 463 percent precisely because they would infer that Eagle was frequently paid much less than the amount it billed, either by Medicare or by other insurers who followed Sentinel's recommendations.

In sum, Sentinel's profit margin calculations, to the extent they imply anything, imply that Eagle's bills were unreasonably high. But whether a particular bill is unreasonable is a statement of non-actionable opinion. Upon reconsidering these statements, the court concludes Sentinel's motion for summary judgment should have been granted on this issue.

### C. Implications of Sentinel's Per-Flight Cost Calculations

The court's summary judgment order concluded that Sentinel's cost-per-flight calculations were materially accurate, and so were not defamatory. Id. at *6-7. But Eagle maintains that the order addressed only whether the calculations were directly defamatory, not whether the cost calculations created any defamation by implication.

The only defamatory implication identified by Eagle from the cost calculations is that "Plaintiffs were overbilling for their services." (Pls.' Mot. Clarify at 6 (ECF No. 438).) In other words, this assertion is not substantively different from Eagle's argument regarding profit margin calculations. As already discussed at length, "overbilling" is non-actionable opinion. Accordingly, Sentinel's cost-per-flight calculations are neither directly defamatory nor implicitly defamatory.

## IV.    Tortious Interference

Although not included in the motion for clarification, Eagle states in its opposition to the motion for reconsideration that its "tortious interference claim is based on more than just the allegedly defamatory statements Plaintiffs have put at issue." (Pls. Opp'n to Mot. Recons. at 15.)

To the extent Eagle believes the tortious interference claim remains operative separate from the defamation claims, the court now clarifies that it does not. The only tortious interference claim identified by the complaint arose from the defamation allegations discussed in the original summary judgment order. (See FAC ¶¶ 92-95.) Because Sentinel's motion for summary judgment (upon reconsideration) will be granted on the entire defamation claim, and because the court declines to allow Eagle to move forward with the other possible defamatory statements identified in its motion for clarification, nothing remains to support a tortious interference claim. Accordingly, this claim has also been extinguished.

## CONCLUSION

Eagle's motion for clarification (ECF No. 438) is DENIED. Sentinel's motion for reconsideration (ECF No. 441) is GRANTED. Upon reconsideration, Sentinel's original motion for summary judgment (ECF No. 206) is granted in its entirety.

The parties are ordered to file a joint status report by January 15, 2020, identifying what, if any, issues remain for the court to resolve.  If there is nothing further, the court will enter judgment and close the case.

SO ORDERED this 17th day of December, 2019.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge